Harry D. JENNINGS et al., t/a Starlight Grill,

v.

UNITED STATES.

Civ. A. No. 2674.

United States District Court
E. D. Virginia.

June 5, 1959.

James R. Moore, Abingdon, Va., for plaintiffs.

John M. Hollis, U. S. Atty., Norfolk, Va., for the Government.

STERLING HUTCHESON, District Judge.

The issues here involved may be summarized as follows:

1. Whether the plaintiffs' operation of the restaurant trading as Starlight Grill comes within the coverage of the Federal Cabaret Tax. Section 101.14, Treasury Regulation 43.

2. If so, is the Government's estimate of tax due arrived at by a formula devised by the Government agent an accurate and adequate method of determining the tax deficiency, if any?

It is my opinion that the operation of the Starlight Grill as disclosed by the evidence and the stipulation comes within the provisions of the Statute and that part of the income received from the operation of the entertainment feature is taxable thereunder.

The evidence and stipulation disclosed a difference in the method of computing the proper cabaret tax due by plaintiffs. The Government agent attempted to devise a formula by which he would be able to compute the tax alleged due. This formula consisted of a percentage arrived at after a test period of one week in June 1956. This test consisted of reading the cash register at the beginning of the period of activity in the restaurant which constituted a cabaret operation and a reading at the end of such activity. The agent on the basis of this one-week test estimated a percentage of gross sales that was attributed to the business within the contemplation of the Cabaret Tax. This formula was then applied retroactive to cover the period from May 1953 to some time in 1956.

The taxpayer in an attempt to determine the proper amount of Cabaret Tax due ran a similar test for one month and arrived at a percentage figure of 26% gross receipts as contrasted with the percentage figure of 44.3176% estimated by the Treasury agent. The plaintiffs during this entire period of operations paid Cabaret Tax in the amount percentage-wise that averaged a little over 9%. It would seem the real issue here involved is a determination that if the approximate 9% of gross receipts on which tax was actually paid was erroneous, then what would be the proper percentage of gross receipts on which the tax should be computed?

It is my opinion that the Government's figure of 44.3176% of gross receipts arrived at in June 1956 and applied retroactively to a period extending back to May 1953, constitutes an inaccurate and unfair determination of Cabaret Tax allegedly due. The facts are somewhat similar to those in Hrcka v. Crenshaw, Collector, D.C., 140 F.Supp. 350, affirmed on other grounds, 4 Cir., 237 F.2d 372. In that case the taxpayers operated a retail shoe store. The Revenue agents, not finding a satisfactory set of books and being unable to obtain a satisfactory result by a net worth and bank deposit examination, undertook to determine the income by a comparison with the income of a somewhat similar business located in the same block. Upon suit for refund the Government defended the assessment but relied principally upon a technical defense.

The evidence in this case clearly indicates that the taxpayers were operating a growing business. In the early formative years the activity was much less than in the later period of time when the agent made his computations. The record is inadequate for this Court to determine what is the precise percentage formula by which the Cabaret Tax can be accurately computed. However, the plaintiffs conceded that their test conducted over a longer period of time disclosed a percentage of gross receipts of approximately 26%. This it would seem, amounts to the admission that the 9% of gross receipts on which Cabaret Tax

was actually paid was an inadequate amount. Therefore, it is my conclusion that the proper tax due by the plaintiffs should be computed by the formula of 26% of the gross receipts of the activity that comes within the contemplation of the Cabaret Tax Statute. No other method of determination has been suggested. I am aware of the presumption of correctness raised by the Commissioner's determination, but the evidence is such that in my opinion that presumption is overcome and we are left with no proof better than the test made by the taxpayers discussed earlier.

It is suggested that counsel submit findings of fact and conclusions of law in accordance with the views expressed herein.