Herschell **MILLER** and Ross Miller, d/b/a
Silver Palm, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

No. 57 C 1255.

United States District Court
N. D. Illinois, E. D.

Oct. 28, 1960.

Mitchell & Conway, Robert J. Downing and William M. Ward, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty., Chicago, Ill., for defendant.

PERRY, District Judge.

The above-entitled action came on for trial before this Court without a jury and plaintiffs were represented by their attorney, Robert Downing, and the defendant and counter-claimant, United States of America, appeared by its attorney, R. Tieken, United States Attorney for the Northern District of Illinois, and was represented by Harvey M. Silets, Assistant United States Attorney.

The Court after carefully considering the pleadings, the answers to the various interrogatories, the testimony and the evidence offered, finds the following facts to be true and correct, and based thereon reaches the following conclusions of law:

### Findings of Fact

1. This is a suit of a civil nature against the United States of America a sovereign power, for the recovery of cabaret taxes, alleged to have been erroneously, excessively and illegally assessed and collected pursuant to Section 1700 (e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1700(e).

2. For the period November 1, 1949 through May 31, 1953 the plaintiffs, Herschell Miller and Ross Miller operated the Silver Palm as a tavern and cabaret at 1117 Wilson Avenue, Chicago, Illinois. During that period of time liquid beverages were sold to customers. Entertainment was provided during certain of the hours.

3. The books and records of the Silver Palm were maintained in a manner which set forth the receipts as follows:

(a) The amount for the barroom under the caption, "Bar."

(b) The amount for the entertainment room under the caption, "Show" and "After-Show."

The books and records of the Silver Palm show the total for each of the separate classifications by month. The amount of cabaret tax for the sales recorded under the caption, "Show" was recorded separately for each month.

4. Plaintiffs' Exhibits 1 through 11 are the ledger sheets of the plaintiffs for the period April 1950 through May 1953. According to the books and records of the Silver Palm the following is a list of the receipts by classification and cabaret tax collected and paid as separated by each month:

| Date | Bar | Show | Cabaret Tax | After Show |
|---|---|---|---|---|
| **1949** | | | | |
| November | $3,419.45 | $6,100.05 | $1,220.05 | $4,202.65 |
| December | 3,583.60 | 6,217.50 | 1,243.30 | 3,756.95 |
| | $7,003.05 | $12,317.55 | $2,463.35 | $7,959.60 |
| **1950** | | | | |
| January | 3,382.90 | 6,338.15 | 1,267.60 | 4,193.10 |
| February | 3,037.25 | 5,746.87 | 1,149.38 | 3,868.35 |
| March | 3,353.15 | 6,201.40 | 1,240.30 | 4,128.10 |
| April | 3,444.65 | 6,535.00 | 1,307.00 | 4,552.20 |
| May | 3,478.80 | 6,127.35 | 1,225.45 | 4,841.35 |
| June | 3,295.80 | 6,207.85 | 1,241.55 | 4,123.10 |
| July | 3,484.90 | 6,287.95 | 1,257.60 | 5,029.60 |
| August | 3,623.25 | 6,435.00 | 1,287.00 | 5,255.85 |
| September | 3,410.80 | 6,095.10 | 1,219.10 | 5,132.00 |
| October | 3,344.40 | 6,160.80 | 1,232.15 | 4,426.30 |
| November | 3,083.80 | 5,479.40 | 1,095.85 | 4,219.75 |
| December | 3,250.45 | 5,578.85 | 1,115.75 | 3,788.70 |
| | $40,190.15 | $73,193.72 | $14,638.73 | $53,558.40 |
| **1951** | | | | |
| January | $ 3,198.15 | $ 2,394.09 | $ 478.81 | $ 8,429.60 |
| February | 2,750.05 | 1,567.30 | 313.46 | 8,446.20 |
| March | 3,042.70 | 1,863.34 | 372.66 | 8,965.00 |
| April | 3,153.85 | 1,381.65 | 276.33 | 9,589.20 |
| May | 3,368.75 | 1,392.71 | 278.54 | 9,409.55 |
| June | 3,552.10 | 1,623.16 | 324.64 | 9,726.30 |
| July | 3,509.40 | 1,244.17 | 248.83 | 9,342.10 |
| August | 3,524.05 | 1,474.42 | 294.88 | 10,416.25 |
| September | 3,393.25 | 1,439.13 | 287.82 | 10,724.95 |
| October | 3,426.00 | 1,509.15 | 301.82 | 10,802.35 |
| November | 3,384.95 | 1,362.41 | 272.84 | 9,313.80 |
| December | 3,635.08 | 1,194.34 | 238.86 | 9,209.45 |
| | $39,938.33 | $18,445.87 | $3,689.49 | $114,434.75 |
| **1952** | | | | |
| January | $ 3,343.87 | $ 1,375.14 | $ 269.00 | $ 9,326.26 |
| February | 2,933.60 | 1,181.90 | 241.81 | 9,216.00 |
| March | 3,067.40 | 1,253.42 | 250.68 | 9,353.85 |
| April | 3,014.05 | 1,173.92 | 234.78 | 8,853.00 |
| May | 3,135.10 | 1,277.63 | 255.52 | 10,521.45 |
| June | 3,121.65 | 1,155.45 | 231.10 | 9,235.05 |
| July | 3,253.00 | 1,058.30 | 211.65 | 9,234.95 |
| August | 3,272.30 | 1,186.50 | 237.30 | 10,310.90 |
| September | 3,194.00 | 1,104.86 | 220.99 | 8,909.30 |
| October | 3,091.95 | 1,073.38 | 214.67 | 8,372.35 |
| November | 2,582.71 | 1,060.71 | 212.14 | 8,447.40 |
| December | 2,594.00 | 885.38 | 177.07 | 7,463.25 |
| | $36,603.63 | $13,786.59 | $2,756.71 | $109,243.76 |
| **1953** | | | | |
| January | $2,192.90 | $ 1,167.84 | $ 233.56 | $ 8,491.75 |
| February | 1,966.80 | 1,061.50 | 272.30 | 7,353.60 |
| March | 1,975.19 | 951.92 | 190.38 | 7,473.85 |
| April | 1,969.90 | 1,031.79 | 206.36 | 6,961.90 |
| May | 2,086.45 | 1,176.67 | 235.53 | 8,129.70 |
| | $10,191.24 | $ 5,389.72 | $1,138.13 | $38,410.80 |

The cabaret tax was paid on the basis of the receipts recorded by the plaintiffs under the caption entitled, "Show." No cabaret tax was paid by the plaintiffs for the amounts recorded as payments under the caption entitled, "After-Show."

5. The interior of the Silver Palm was physically arranged as follows:

A barroom which contained stools at the bar and a few booths.

A separate room in which the entertainment was provided, which had a bar, booths, tables and chairs.

6. On December 30, 1955 the then District Director of Internal Revenue issued an assessment for the period from November 1, 1949 through June 30, 1952 in the amount of $35,925.69 with interest in the amount of $9,471.13. This assessment was computed essentially upon the Government's contention that the following receipts from the entertainment room recorded in the books and records of the plaintiff (except as otherwise indicated) under the heading "After-Show" were subject to the excise tax:

| 1949 | November–December (estimated) | $ 6,749.95 |
| 1950 | 12 Months (January–March estimated) | 43,682.43 |
| 1951 | 12 Months | 114,434.75 |
| 1952 | January–June | 56,505.61 |

Notice and demand for payment was mailed to the last known address of the plaintiffs on December 30, 1955.

7. On August 31, 1956, the then District Director of Internal Revenue issued an assessment for the period from July 1, 1952 through May 31, 1953 in the amount of $14,858 with interest in the amount of $3,217.33. This assessment was computed essentially upon the Government's contention that the following receipts from the entertainment room recorded in the books and records of the plaintiff under the heading "After-Show" were subject to the excise tax:

| 1952 | July–December | $52,738.15 |
| 1953 | January–May | 38,410.80 |

Notice and demand for payment was mailed to the last known address of the plaintiffs on September 26, 1956.

8. Pursuant to the assessments previously referred to in paragraphs 6 and 7, there has been collected the sum of $2,406.36; $2,002.57 being collected from Ross Miller and $403.89 from Herschell Miller. The aforesaid $2,406.36 was applied in reduction of the assessment referred to in paragraph 6. An additional amount of $578.10 was collected from the plaintiffs in January, 1960; $575.46 being applied in reduction of the assessment referred to in paragraph 6 and $2.64 applied to interest accrued on that assessment.

9. On November 29, 1957, the plaintiffs filed with the District Director of Internal Revenue in Chicago, Illinois, a claim for refund in the total amount of $2,406.36 plus interest, which amounts represent the money collected by the District Director of Internal Revenue based upon the assessments made by the District Director of Internal Revenue.

10. On March 5, 1958, the District Director of Internal Revenue at Chicago, Illinois, denied plaintiffs' claim for refund.

11. The District Director of Internal Revenue has not refunded any amount which has been previously collected from the plaintiffs based upon the assessments made by the District Director of Internal Revenue.

12. On July 25, 1957, plaintiffs by this action sought to recover the amount of cabaret taxes in the amount of $2,-406.36, plus interest, set forth in their aforesaid claim for refund. Upon the conclusion of the evidence, plaintiffs

sought to amend their complaint to recover in addition the amount of $578.10 collected from the plaintiffs after the commencement of this action.

13. At the request and authorization of the Commissioner of Internal Revenue and under the direction of the Attorney General of the United States pursuant to the provisions of Section 7401 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 7401, the United States of America filed its counter-claim to recover the then outstanding and unpaid balance of $61,065.79 it claimed to be due upon the aforesaid assessments.

14. The entertainment offered at the Silver Palm was burlesque—strip-tease dancing which commenced between 9:00 p. m. and 10:00 p. m. each evening and was performed continuously thereafter until it closed between 3:00 a. m. and 4:00 a. m.

15. The Silver Palm operated under a local liquor license which permitted the plaintiffs to sell alcoholic beverages to 4:00 a. m. each night and to 5:00 a. m. on Saturday night (Sunday morning).

16. Week nights there were three bartenders and one waitress serving in the entertainment room. Week ends there were four bartenders and two waitresses serving in the entertainment room. The work schedules of the bartenders were arranged so that all the bartenders worked during the hours the entertainment was furnished, though one bartender arrived prior to the commencement of the entertainment. The other bartenders worked an eight-hour shift which ended at 4:00 a. m. on week nights. The available payroll records do not disclose any overtime being paid the bartenders.

17. It was the practice of the bartenders and "bouncer" to ask the customers to leave at 4:00 a. m. The street lights of the Silver Palm were turned off and the stools in the front room placed on the bar so that after 4:00 a. m. on week nights and 5:00 a. m. on week ends the Silver Palm appeared to be closed. Chicago Police Department records for 1952 and 1953 do not disclose any complaint or arrest of plaintiffs for operating the Silver Palm beyond the hours permitted by their liquor license.

18. The entertainment room was open for business a short time each night prior to the commencement of the entertainment, and those customers purchasing beverages at such time were permitted to remain to view the show. The prices on drinks in the entertainment room before the show commenced and during the presentation of the show were identical. No cover or minimum charges were made of customers to permit them to see the show. Such prices, however, were higher than the prices for similar beverages served in the front bar.

19. The books and records which reflect what purports to be the breakdown of total sales in the entertainment room between the time the entertainment was furnished and when no entertainment was presented were based upon figures presented to their accountants by the plaintiffs, Ross and Herschell Miller. Based upon information furnished by plaintiffs, the excise tax returns were prepared.

20. The bar in the entertainment room was on occasion operated and some sales were made after hours and after the entertainment had ceased. Of the number of hours each business day drinks could be obtained in the entertainment room, this Court finds that entertainment was presented for at least half the time.

21. Listed below is a comparison of amounts expended for entertainment expense and agents' expense, with show receipts. These are both expenses directly related to the presentation of the entertainment.

| Period | Expended for Entertainment | Agents | Total | Total Show Receipts |
|---|---|---|---|---|
| **1950** | | | | |
| January | $ (a) | $ (a) | $ (a) | $ |
| February | (a) | (a) | (a) | |
| March | (a) | (a) | (a) | |
| April | 3,502.19 | 2,400.00 | 5,902.19 | 6,535.00 |
| May | 2,869.80 | 1,620.00 | 4,489.80 | 6,127.35 |
| June | 2,900.99 | 1,720.00 | 4,620.99 | 6,207.85 |
| July | 3,547.94 | 2,400.00 | 5,947.94 | 6,287.95 |
| August | 2,926.16 | 1,920.00 | 4,846.16 | 6,435.00 |
| September | 3,608.60 | 2,400.00 | 6,008.60 | 6,095.10 |
| October | 2,944.77 | 1,920.00 | 4,864.77 | 6,160.80 |
| November | 2,851.07 | 1,920.00 | 4,771.07 | 5,479.40 |
| December | 3,209.51 | 2,482.00 | 5,691.51 | 5,578.85 |
| 1950—9 Mos. | $28,361.03 | $18,782.00 | $47,143.03 | $54,907.30 |
| **1951** | | | | |
| January | $ 2,624.70 | $ 1,813.00 | $ 4,437.70 | $ 2,394 09 |
| February | 2,409.66 | 1,607.00 | 4,016.66 | 1,567.30 |
| March | 2,648.79 | 1,651.00 | 4,299.79 | 1,853.34 |
| April | 2,996.68 | 2,065.00 | 5,061.68 | 1,381.65 |
| May | 2,548.32 | 1,674.00 | 4,222.32 | 1,392.71 |
| June | 2,560.81 | 1,658.00 | 4,218.81 | 1,623.16 |
| July | 3,224.53 | 2,028.00 | 5,252.53 | 1,244.17 |
| August | 2,935.21 | 1,594.00 | 4,529.21 | 1,474.42 |
| September | 3,705.11 | 2,011.00 | 5,716.11 | 1,439.13 |
| October | 2,956.90 | 1,613.00 | 4,569.90 | 1,509.15 |
| November | 2,919.48 | 1,669.00 | 4,588.48 | 1,362.41 |
| December | 3,554.65 | 2,049.00 | 5,603.65 | 1,194.34 |
| Year 1951 | $35,084.84 | $21,432.00 | $56,516.84 | $18,445.87 |
| **1952** | | | | |
| January | $ 2,640.00 | $ 1,876.00 | $ 4,516.00 | $ 1,375.14 |
| February | 2,621.78 | 1,828.00 | 4,449.78 | 1,181.90 |
| March | 3,153.53 | 2,216.00 | 5,369.53 | 1,253.42 |
| April | 2,788.68 | 1,765.00 | 4,553.68 | 1,173.92 |
| May | 2,633.59 | 1,751.00 | 4,384.59 | 1,277.63 |
| June | 3,346.70 | 2,131.00 | 5,477.70 | 1,155 '5 |
| July | 2,764.63 | 1,723.00 | 4,487.63 | 1,058.30 |
| August | 3,324.83 | 2,156.00 | 5,480.83 | 1,186.50 |
| September | 2,659.50 | 1,788.00 | 4,447.50 | 1,104.86 |
| October | 2,647.56 | 1,733.00 | 4,380.56 | 1,073.38 |
| November | 3,425.10 | 2,101.00 | 5,526.10 | 1,060.71 |
| December | 2,434.95 | 1,612.00 | 4,046.95 | 885.38 |
| Year 1952 | $34,440.85 | $22,680.00 | $57,120.85 | $13,786.59 |
| **1953** | | | | |
| January | $ 2,661.05 | $ 1,780.00 | $ 4,441.05 | $ 1,167.84 |
| February | 2,582.53 | 1,753.00 | 4,335.53 | 1,061.50 |
| March | 3,236.24 | 2,193.00 | 5,429.24 | 951.92 |
| April | 2,933.34 | 1,681.00 | 4,614.34 | 1,031.79 |
| May | 3,426.63 | 2,098.00 | 5,524.63 | 1,176.67 |
| 1953—5 months | $14,839.79 | $ 9,505.00 | $24,344.79 | $ 5,389.72 |
| TOTAL | $112,726.51 | $72,399.00 | $185,125.51 | $92,529.48 |
| | | (b) | | (c) |

(a) The entertainment expense was not available by month for November and December of 1949 and January through March, 1950.

(b) Agent expense figures were rounded off to the nearest dollar.

(c) Show receipts are the receipts reported by the taxpayer as subject to cabaret tax.

22. Listed below is a schedule of comparative percentages of show receipts and after-show receipts to total enter-

tainment-room receipts retained by the Silver Palm as per the books for the period November 1, 1949 through May 31, 1953.

| Month | | Show Receipts | | After Show Receipts | | Total Entertainment Room Receipts Retained by Silver Palm | |
|---|---|---|---|---|---|---|---|
| | | Amount | Per Cent Of Total | Amount | Per Cent Of Total | Amount | Per Cent |
| 1949 | Nov | $ 6,100.05 | 59.2% | $ 4,202.65 | 40.8% | $ 10,302.70 | 100.0% |
| | Dec | 6,217.50 | 62.3 | 3,756.95 | 37.7 | 9,974.45 | |
| 1950 | Jan | 6,338.15 | 60.2 | 4,193.10 | 39.8 | 10,531.25 | |
| | Feb | 5,746.87 | 59.8 | 3,868.35 | 40.2 | 9,615.22 | |
| | Mar | 6,201.40 | 60.0 | 4,128.10 | 40.0 | 10,329.50 | |
| | Apr | 6,535.00 | 58.9 | 4,552.20 | 41.1 | 11,087.20 | |
| | May | 6,127.35 | 55.9 | 4,841.35 | 44.1 | 10,968.70 | |
| | Jun | 6,207.85 | 60.1 | 4,123.10 | 39.9 | 10,330.95 | |
| | Jul | 6,287.95 | 55.6 | 5,029.60 | 44.4 | 11,317.55 | |
| | Aug | 6,435.00 | 55.0 | 5,255.85 | 45.0 | 11,690.85 | |
| | Sep | 6,095.10 | 54.3 | 5,132.00 | 45.7 | 11,227.10 | |
| | Oct | 6,160.80 | 58.2 | 4,426.30 | 41.8 | 10,587.10 | |
| | Nov | 5,479.40 | 56.5 | 4,219.75 | 43.5 | 9,699.15 | |
| | Dec | 5,578.85 | 59.6 | 3,788.70 | 40.4 | 9,367.55 | |
| 1951 | Jan | 2,394.09 | 22.1 | 8,429.60 | 77.9 | 10,823.69 | |
| | Feb | 1,567.30 | 15.7 | 8,446.20 | 84.3 | 10,013.50 | |
| | Mar | 1,863.34 | 17.2 | 8,965.00 | 82.8 | 10,828.34 | |
| | Apr | 1,381.65 | 12.6 | 9,589.20 | 87.4 | 10,970.85 | |
| | May | 1,392.71 | 12.9 | 9,409.55 | 87.1 | 10,802.26 | |
| | Jun | 1,623.16 | 14.3 | 9,726.30 | 85.7 | 11,349.46 | |
| | Jul | 1,244.17 | 11.8 | 9,342.10 | 88.2 | 10,586.27 | |
| | Aug | 1,474.42 | 12.4 | 10,416.25 | 87.6 | 11,893.67 | |
| | Sep | 1,439.13 | 11.8 | 10,724.95 | 88.2 | 12,164.08 | |
| | Oct | 1,509.15 | 12.3 | 10,802.35 | 87.7 | 12,311.50 | |
| | Nov | 1,362.41 | 12.7 | 9,373.80 | 87.3 | 10,736.21 | |
| | Dec | 1,194.34 | 11.5 | 9,209.45 | 88.5 | 10,403.79 | |
| 1952 | Jan | 1,375.14 | 12.9 | 9,326.26 | 87.1 | 10,701.40 | |
| | Feb | 1,181.90 | 11.4 | 9,216.00 | 88.6 | 10,397.90 | |
| | Mar | 1,253.42 | 11.8 | 9,353.85 | 88.2 | 10,607.27 | |
| | Apr | 1,173.92 | 11.7 | 8,853.00 | 88.3 | 10,026.92 | |
| | May | 1,277.63 | 10.8 | 10,521.45 | 89.2 | 11,799.08 | |
| | Jun | 1,155.45 | 11.1 | 9,235.05 | 88.9 | 10,390.50 | |
| | Jul | 1,058.30 | 10.3 | 9,234.95 | 89.7 | 10,293.25 | |
| | Aug | 1,186.50 | 10.3 | 10,310.90 | 89.7 | 11,497.40 | |
| | Sep | 1,104.86 | 11.0 | 8,909.30 | 89.0 | 10,014.16 | |
| | Oct | 1,073.38 | 11.4 | 8,372.35 | 88.6 | 9,445.73 | |
| | Nov | 1,060.71 | 11.2 | 8,447.40 | 88.8 | 9,508.11 | |
| | Dec | 885.38 | 10.6 | 7,463.25 | 89.4 | 8,348.63 | |
| 1953 | Jan | 1,167.84 | 12.1 | 8,491.75 | 87.9 | 9,659.59 | |
| | Feb | 1,061.50 | 12.6 | 7,353.60 | 87.4 | 8,415.10 | |
| | Mar | 951.92 | 11.3 | 7,473.85 | 88.7 | 8,425.77 | |
| | Apr | 1,031.79 | 12.9 | 6,961.90 | 87.1 | 7,993.69 | |
| | May | 1,176.67 | 12.6 | 8,129.70 | 87.4 | 9,306.37 | |
| TOTALS | | $123,133.45 | 27.6% | $323,607.31 | 72.4% | $446,740.76 | 100% |

23. From November 1, 1949 to December 31, 1950, the distribution between sales made during the entertainment period and while no entertainment was furnished appears to be consonant with the type of operation, the hours of operation, the costs of the entertainment, and all of the circumstances and evidence. Commencing January 1, 1951, a public accountant made certain recommendations to the plaintiffs concerning such method of making such distributions. The total amount of sales as reported from the entertainment room from January 1, 1951 to May 30, 1953 is correct. However, from all of the facts, including, but not limited to, the type of operation, the number of hours of entertainment was presented as compared to the number of hours there was no entertainment, the costs of the entertainment as compared to the entertainment receipts, the control by the plaintiffs of the distribution on the records

between show receipts and non-show receipts, and all of the evidence, the Court finds that the sales made by the Silver Palm while the entertainment was presented, during the period January 1, 1951 to May 31, 1953, were in excess of what was reported on their cabaret tax returns filed during that time. The Court finds that the receipts retained by the Silver Palm from sales made while the entertainment was presented and when no entertainment was presented, were as follows:

| Year | Month | Retained Show Receipts | After Show Receipts | Total Entertainment Room Receipts Retained |
|---|---|---|---|---|
| 1949 | November | $ 6,100.05 | $ 4,202.65 | $ 10,302.70 |
| | December | 6,217.50 | 3,756.95 | 9,974.45 |
| 1950 | Jan | 6,338.15 | 4,193.10 | 10,531.25 |
| | Feb | 5,746.87 | 3,868.35 | 9,615.22 |
| | Mar | 6,201.40 | 4,128.10 | 10,329.50 |
| | Apr | 6,535.00 | 4,552.20 | 11,087.20 |
| | May | 6,127.35 | 4,841.35 | 10,968.70 |
| | Jun | 6,207.85 | 4,123.10 | 10,330.95 |
| | Jul | 6,287.95 | 5,029.60 | 11,317.55 |
| | Aug | 6,435.00 | 5,255.85 | 11,690.85 |
| | Sep | 6,095.10 | 5,132.00 | 11,227.10 |
| | Oct | 6,160.80 | 4,426.30 | 10,587.10 |
| | Nov | 5,479.40 | 4,219.75 | 9,699.15 |
| | Dec | 5,578.85 | 3,788.70 | 9,367.55 |
| 1951 | Jan | 5,411.85 | 5,411.84 | 10,823.69 |
| | Feb | 5,006.75 | 5,006.75 | 10,013.50 |
| | Mar | 5,414.17 | 5,414.17 | 10,828.34 |
| | Apr | 5,485.42 | 5,485.43 | 10,970.85 |
| | May | 5,401.13 | 5,401.13 | 10,802.26 |
| | Jun | 5,674.73 | 5,674.73 | 11,349.46 |
| | Jul | 5,293.13 | 5,293.14 | 10,586.27 |
| | Aug | 5,945.33 | 5,945.34 | 11,890.67 |
| | Sep | 6,082.04 | 6,082.04 | 12,164.08 |
| | Oct | 6,155.75 | 6,155.75 | 12,311.50 |
| | Nov | 5,368.11 | 5,368.10 | 10,736.21 |
| | Dec | 5,201.90 | 5,201.89 | 10,403.79 |
| 1952 | Jan | 5,350.70 | 5,350.70 | 10,701.40 |
| | Feb | 5,198.95 | 5,198.95 | 10,397.90 |
| | Mar | 5,303.63 | 5,303.64 | 10,607.27 |
| | Apr | 5,013.46 | 5,013.46 | 10,026.92 |
| | May | 5,899.54 | 5,899.54 | 11,799.08 |
| | Jun | 5,195.25 | 5,195.25 | 10,390.50 |
| | Jul | 5,146.62 | 5,146.63 | 10,293.25 |
| | Aug | 5,748.70 | 5,748.70 | 11,497.40 |
| | Sep | 5,007.08 | 5,007.08 | 10,014.16 |
| | Oct | 4,722.86 | 4,722.87 | 9,445.73 |
| | Nov | 4,754.05 | 4,754.06 | 9,508.11 |
| | Dec | 4,174.31 | 4,174.32 | 8,348.63 |
| 1953 | Jan | 4,829.80 | 4,829.79 | 9,659.59 |
| | Feb | 4,207.55 | 4,207.55 | 8,415.10 |
| | Mar | 4,212.88 | 4,212.89 | 8,425.77 |
| | Apr | 3,996.84 | 3,996.85 | 7,993.69 |
| | May | 4,653.18 | 4,653.19 | 9,306.37 |
| TOTALS | | $235,366.98 | $211,373.78 | $446,740.76 |

Conclusions of Law

1. Any Finding of Fact which may be considered a Conclusion of Law is hereby concluded as a matter of law.

2. The Court has jurisdiction of the subject matter of this action and of the parties hereto.

3. The taxpayers did not report all of the sales made in the entertainment room while the entertainment was offered, and the Court concludes that there were additional sales subject to the cabaret tax. The amount of such additional sales retained by the Silver Palm (after excluding therefrom the

amount of the attributable cabaret tax) was $112,233.53. To the extent of these sales, the assessments made by the Government were proper.

4. The fact that the total sales were recorded in the books of the Silver Palm at plaintiffs' direction, and segregated by him in portions attributable to sales made in the entertainment room while the entertainment was offered and sales made while there was no entertainment, was some evidence of those being the amounts that were actually so received during those times, but from the hours of operation and type of operation, and all the evidence and circumstances, it is concluded that the sales were not correctly recorded and were as shown in Finding of Fact Number 23.

5. Even though the assessments may have been partially excessive, taxpayers are not entitled to any refund of taxes paid as a consequence of such assessments, without proving that said sum, in whole or in part, represents payment in excess of their true tax liability to the Government for the period November 1, 1949 to May 31, 1953. This the plaintiffs have not done. From all of the evidence, testimony and circumstances, this Court has found that the receipts from the entertainment room which were subject to the cabaret tax were in excess of what the taxpayers reported in their returns. The amount of tax due on these additional receipts is in excess of what the taxpayers seek to recover here. The taxpayers have thus failed to prove to this Court by a fair preponderance of the evidence that no part of the tax refund claimed is due the Government.

6. Judgment will be rendered for the defendant and against the plaintiffs on the issues of the respective pleadings regarding plaintiffs' claim for refund.

7. From all of the evidence, testimony and circumstances, this Court concludes that in the Government's counter-claim action to reduce to judgment the balance it claimed as owing by the taxpayers upon the assessments, the Government has established to the extent that the taxpayers have failed to overcome the prima facie case made by the tax assessments together with the additional weight of the evidence adduced in the trial, that there is due on its counter-claim the amount of $22,522.73, being tax in the amount of $14,712.88 assessed on December 30, 1955, for the period November 1, 1949 through June 30, 1952, and tax in the amount of $7,809.85 assessed on August 31, 1956 for the period July 1, 1952 through May 31, 1953.

8. The taxpayers and counter-defendants, Herschell and Ross Miller, are indebted to the United States of America in the sum of $22,522.73 less the amount paid and credited against the assessments of $2,981.82, plus statutory interest of $3,568.74 accrued to September 30, 1960 on the balance due on the assessment made December 30, 1955, and statutory interest of $1,879.49 accrued to September 30, 1960 on the balance due on the assessment made August 31, 1956, and interest thereafter upon the judgment until paid as provided by law.

9. The United States of America is entitled to judgment with interest against Herschell and Ross Miller in the aforesaid indebtedness in the sum of $24,989.14 plus interest as provided by law.