**IROQUOIS GARDENS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4001.**

United States District Court
W. D. Kentucky,
at Louisville.

Aug. 3, 1961.

As Amended Aug. 11, 1961.

Eli H. Brown, III, W. G. Hume, Louisville, Ky., for plaintiff.

Wm. B. Jones, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

This action was filed in this Court on June 23, 1960, by the plaintiff Iroquois Gardens, Inc., against the United States of America, seeking recovery of federal excise taxes alleged to have been erroneously and illegally assessed against it in the sum of $663 together with interest at the rate of 6% per annum from the date paid, a portion of which tax it was alleged was wrongfully collected under the provisions of Section 4231(6) of the 1954 Internal Revenue Code, 26 U.S.C.A. The action is brought under the provisions of Section 1346 of Title 28, United States Code.

December 9, 1960, plaintiff filed its amended and supplemental complaint seeking to recover the further sum of $5,131.03, together with interest at the rate of 6% per annum from the date paid, representing additional excise taxes alleged to have been erroneously and illegally assessed and collected.

The defendant admitted that the Internal Revenue Service made a deficiency assessment and collected additional excise taxes from the plaintiff Iroquois Gardens, Inc., as alleged in the complaint and

amended and supplemental complaint, but denied that the assessment and collection were erroneous and illegal.

The case was tried to the Court without a jury on December 20, 1960, and argued by counsel on December 21, 1960. March 14, 1961, it was submitted to the Court on briefs of counsel and counsel for plaintiff filed a supplementary brief July 11, 1961.

From the stipulation filed and testimony heard at the trial and the briefs of counsel, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

(1) Plaintiff is a corporation organized under the laws of Kentucky, with its principal place of business at 5306 New Cut Road, Louisville, Kentucky, and at all times involved in this proceeding was engaged in the business of operating a night club known as Iroquois Gardens located at the same address. In Iroquois Gardens plaintiff maintained a dining room, a cocktail lounge known as the Forest Lounge, and another lounge known as the Hickory Room.

(2) During the period January 1, 1956, to March 31, 1959, at the times required by law, plaintiff filed with the United States Internal Revenue Service in Louisville, Kentucky, its returns of federal excise taxes showing the amount of excise or cabaret taxes due, and remitted payment for the amounts of such taxes reported. The total amount paid by plaintiff during this period was $48,081.-95.

(3) On or about October 16, 1959, the District Director of Internal Revenue, Louisville, Kentucky, formally notified the plaintiff that additional cabaret taxes in the amount of $59,028.96 were due from plaintiff, and payment was demanded for the alleged deficiency, together with interest at 6% per annum. The deficiency assessment was based upon the determination that 50% of the receipts from the Forest Lounge and 90% of the dining room receipts were taxable.

(4) On January 15 and January 26, 1960, plaintiff paid portions of the alleged deficiency of cabaret taxes totalling $663 in March and April, 1960, the District Director levied upon certain assets of the plaintiff and applied the amount of $5,131.03 received as a result of the levy against the alleged deficiency of cabaret taxes.

(5) Plaintiff filed with the District Director its claims for refund of the amounts of cabaret taxes paid under the deficiency assessment, $663 and $5,131.03, and demanded payment of interest according to law. The District Director notified plaintiff, according to law, that its claims for refund were disallowed in their entirety and this suit followed.

(6) During the period in question here, a pianist was employed by plaintiff to play the piano in the Forest Lounge. The pianist did not sing or encourage customers to engage in community singing; there was no dancing in the Forest Lounge, and no other form of entertainment was provided there by the management. No minimum charge, cover charge, or admission charge was made to customers in the Forest Lounge. It was plaintiff's practice not to charge and collect cabaret taxes from patrons in the Forest Lounge, and it is now conceded by the Internal Revenue Service that its receipts were not taxable.

(7) The small cocktail lounge known as the Hickory Room was immediately off the foyer in the premises and situated between the main dining room and Forest Lounge. No minimum charge, cover charge, or admission charge was made to customers in the Hickory Room and no entertainment was provided there. The defendant does not contend that its receipts were subject to cabaret taxes.

(8) There was a dining room on the third floor of the Club's premises, which was occasionally used for private parties, and the receipts from it were not claimed to be subject to cabaret taxes because no entertainment was offered by the management.

(9) The main dining room of Iroquois Gardens was a spacious room, approximately 60 feet by 90 feet, with an elevated area, 18 feet by 24 feet, for danc-

ing. The dining room opened for business at approximately 6:00 p. m., and closed at 1:30 a. m., except during the summer months when the Club remained open until 2:30 a. m., Daylight Saving Time. An orchestra played nightly except Sunday and various shows or acts were presented. The music usually began at 8:00 or 8:30 p. m., and the first show was presented about 9:00 p. m. A minimum charge of $2.50 was usually made in the dining room, however, on occasions such as Derby Eve or New Year's Eve it was higher.

(10) During the period involved here, it was the practice of the plaintiff not to charge a cabaret tax in the dining room if the bill was paid prior to the time the first show was presented, but always to charge cabaret tax on those checks paid subsequent to show time. The procedure for handling guest checks in the dining room was recited in the testimony of Mrs. Minnie McDonald, manager of the Club, and substantiated by Mrs. Ida Lee Wright, food checker and cashier.

The cashier's desk was located in the rear of the kitchen in the lower level of the premises directly beneath the main dining room. When orders were filled in the kitchen and service bar, the food and beverages were checked by Mrs. Wright and she listed the prices for same on the guest checks before the orders were taken to the dining room by the waiters. A customer desiring to pay his check requested it from the waiter. Before the check was presented to the customer, it was returned to the cashier who totalled the food and beverage items, entered the minimum charge if applicable, and added to the total the amounts of state and federal taxes due. Upon receipt of payment from the customer, the waiter turned the money and the guest check over to the cashier. At the close of each day's business the guest checks were separated into two groups, that is, checks on which a cabaret tax had been charged and collected and those on which no cabaret tax was charged and collected. The cashier totalled each group of checks and turned the checks and receipts over

to the manager. According to Mrs. Wright's testimony, the cabaret tax was applied to all checks presented for payment after the entertainment started, and that from her location in the kitchen she had no difficulty in determining the exact time the entertainment began.

(11) From January 1, 1956, to March 31, 1959, the receipts from the main dining room totalled $488,391.37; cabaret tax was collected and reported on $247,181.55, approximately 50% of the total receipts, and taxes in the amount of $48,081.95 were paid to the District Director of Internal Revenue at Louisville, Kentucky. The remaining $241,209.82 carried on plaintiff's books as dining room receipts were classified by plaintiff as non-taxable.

(12) The books and records which reflect what purports to be the breakdown as to taxable and non-taxable dining room receipts were based upon figures presented by plaintiff to its accountant, Patrick H. Mitchell. The bookkeeping system at Iroquois Gardens was established in March, 1956, in accordance with the recommendations of the accountant and plaintiff's attorney at that time. The excise or cabaret tax returns for the period in question were prepared by Mr. Mitchell based on information compiled by him and furnished to him by the plaintiff.

(13) It was determined by the Commissioner of Internal Revenue that virtually all of the patrons who purchased food and beverages in the dining room stayed for the entertainment. He contends, therefore, that 90% of the dining room receipts were taxable, regardless of whether the guest checks were paid before or after the entertainment started.

■ (14) The Internal Revenue Service having conceded that plaintiff's receipts from customers in its Forest Lounge, Hickory Room, and private dining room were not taxable, only the proportion of the main dining room receipts which were properly taxable remains at issue. The only question before the Court is whether additional taxes total-

ling $5,794.03, the total amount paid by plaintiff on the deficiency assessment, were due for the period from January 1, 1956, to March 31, 1959.

(15) In its reply brief, plaintiff contends that the receipts of the dining room on which no tax was paid during that period, $241,209.82, were not derived solely from dining room sales; that receipts from private parties, including charges for liquor ordered and consumed in the Forest Lounge, were classified on plaintiff's books under the heading "dining room" because the bills for such parties were usually paid by one check covering the complete cost of the party, including tips. Moreover, all food served on the premises was listed under dining room receipts, regardless of whether it was served in the Forest Lounge, Hickory Room, private dining room, or main dining room. Plaintiff contends that at least 50% of the $241,209.82 carried on its books as non-taxable dining room receipts was derived from sales not made in the dining room and offers $120,000 as a reasonable estimate of such sales; that defendant's contention that tax was paid on only 50% of the dining room receipts is without merit because, in reporting $247,181.55 in taxable receipts, it has paid tax on almost 70% of its true dining room sales.

(16) The determination that 90% of the dining room receipts were subject to the 20% cabaret tax was based upon information furnished the Internal Revenue Service by Agent Winston Scott. The proof in this case shows that in the spring of 1959 plaintiff's accountant requested the Internal Revenue Service to audit plaintiff's excise tax returns for the period January 1, 1956, to March 31, 1959, to determine its books and records and its procedure for collecting and reporting cabaret taxes accurately reflected the proper method. Agent Scott was given the assignment and he spent approximately one and one-half weeks auditing plaintiff's books and records kept by Mitchell. He was advised by Mitchell that the guest checks, which were the basis for the adding machine tapes and final entry of taxable and nontaxable receipts, were available for the audit but Scott did not examine any of the guest checks. According to Mitchell's testimony, Scott advised him that plaintiff's books and records were in order and properly reflected excise taxes due for the period covered in this action, and Scott so testified.

Subsequent to the audit, during the latter part of June, 1959, on dates not clearly established by Scott's testimony, he and two other Internal Revenue Agents were in the dining room at Iroquois Gardens on two occasions. From their visual observations of the operation of the Club at those times, it was determined that 50% of the receipts of the Forest Lounge and 90% of the receipts of the main dining room were subject to the cabaret tax. As heretofore stated, the Internal Revenue Service has now conceded that the Forest Lounge receipts were not taxable. Scott testified that during their visits to the Club the Internal Revenue Agents made no inquiries concerning patrons who might have paid their checks prior to the time the entertainment started and remained for the show; they did not examine any guest checks to determine whether a cabaret tax had been charged and collected, and did not question the cashier or waiters concerning the checks. In the course of Scott's testimony, the Court made repeated efforts to elicit from him the basis for the estimate that 90% of the dining room receipts were subject to the cabaret tax. No proof was offered to contradict plaintiff's contention that the estimate of the Internal Revenue Agents was erroneous and arbitrary. The Court finds that defendant's contention that 90% of the dining room receipts were taxable is without merit.

(17) There is substantial evidence in the record to support plaintiff's contention that receipts from private parties and food served in other rooms on the premises and classified on plaintiff's books as dining room receipts were not subject to cabaret tax. It appears that plaintiff's estimate of $120,000 for such

receipts is reasonable. Therefore, the Court finds that, in paying $5,794.03 on the deficiency assessment, plaintiff overpaid its true tax liability in the amount of $5,794.03 and is entitled to recover that sum, together with interest according to law.

Conclusions of Law

This Court has jurisdiction of this action. Section 1346(a) (1), Title 28, United States Code.

The plaintiff in this action is not entitled to recover any amount paid upon the challenged tax assessment unless it is proven that the amount paid represents payment in excess of plaintiff's true tax liability. Miller v. United States, D.C. Ill., 188 F.Supp. 440, 447; Biansett v. United States, 8 Cir., 283 F.2d 474, 479. See also Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623.

From the findings of fact heretofore made, the Court has concluded that the legal presumption of validity attributable to determinations by the Commissioner of Internal Revenue and his resulting assessment of delinquent taxes is of no significance in this action. In the opinion in Kentucky Trust Company v. Glenn, 6 Cir., 217 F.2d 462, 465, the Court said:

"It is not necessary for a taxpayer, in order to recover an assessment, to prove to, or to convince a jury that the Commissioner acted, in making the assessment, in a manner unwarranted by the actual facts, and unjust to plaintiff. While there is a presumption that the action of the Commissioner is correct, that presumption disappears when evidence is introduced to overcome it. * * * The presumption merely calls upon the opposing party to produce proof to establish his case. It is not evidence and may not be given weight as evidence."

See also New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726; McGrew's Estate v. Commissioner, 6 Cir., 135 F.2d 158, 148 A.L.R. 1045.

In the case of Jennings v. United States, D.C.Va., 177 F.Supp. 597, 599, the Treasury Agent made an examination somewhat similar to that made by Agent Scott in this case, resulting in an assessment based largely upon a percentage estimate which the Court adjudged inaccurate and unfair. The Court said:

"I am aware of the presumption of correctness raised by the Commissioner's determination, but the evidence is such that in my opinion that presumption is overcome and we are left with no proof better than the test made by the taxpayers * * *."

To the same effect is Godwin v. Brown, 8 Cir., 249 F.2d 356.

The Commissioner's determination was held invalid in United States v. Hover, 9 Cir., 268 F.2d 657, 665, and the Court stated:

"The argument of the government that the presumption of correctness attending the Commissioner's determination was not overcome is inapplicable to a situation such as we have here. It is well settled law that this presumption may be rebutted by a showing that the Commissioner's determination is arbitrary or erroneous."

A reading of the testimony of Agent Scott, the only basis in the record on which the Commissioner's determination could have been made, shows that the percentage of total dining room receipts determined to be taxable was clearly an arbitrary figure not based upon an accurate investigation of the facts. In the face of plaintiff's careful effort to accurately account for its receipts subject to the cabaret tax and the Internal Revenue Agent's approval of the methods being used by plaintiff, this Court has concluded upon the above authorities that the Commissioner's determination and resulting assessment were arbitrary.

In the case of Bush's Inc. v. United States, 7 Cir., 277 F.2d 780, the action of the District Judge, in determining that the Commissioner's estimates of pre- and post-entertainment patrons who

viewed the entertainment were arbitrary and exaggerated, was approved. The Government's contention that the statute, Section 4231 of the 1954 Internal Revenue Code, imposes a cabaret tax on all sales made to customers during any portion of the entertainment was rejected. That Court quoted with approval the opinion of the Trial Judge in Hover v. United States, D.C.Cal., 158 F.Supp. 179, 182, affirmed in United States v. Hover, supra, saying:

> " 'To condition a tax on such a tenuous showing that the patrons might if they were to wait long enough view the entertainment does not accord with any meaningful or purposeful distinction that we must impute to Congress.' " [277 F.2d 783.]

It was held that the intent of Congress was to levy a tax only upon receipts taken during the entertainment.

In the case of Eddy Brothers, Inc. v. United States, D.C.Mo., 184 F.Supp. 450, affirmed June 27, 1961, United States v. Eddy Brothers, Inc., 8 Cir., 291 F.2d 529, 532, the Trial Court stated the question involved as whether the taxpayer was subject to cabaret taxes on amounts paid by its patrons for food and beverages orders, served, and paid for prior to the commencement of the entertainment period, where those patrons thereafter remained in taxpayer's establishment for a portion of the entertainment. In that case, as in the case at Bar, the assessed deficiencies for additional taxes were based upon an ascertainment by the Commissioner that the total amount of purchases of food and beverages made by any of the taxpayer's patrons who remained for the entertainment period were subject to the tax, although prior to the entertainment period such patrons paid for all food and beverages ordered and served up to the time of payment. In affirming the Trial Court, the Court of Appeals for the Eighth Circuit said:

> "(W)e agree with the trial court that the purchase of a dinner at plaintiff's establishment before it assumed its cabaret status did not

under the facts here presented entitle the dinner patron to view the entertainment. Plaintiff's patrons who had consumed and paid for their dinners before plaintiff's establishment commenced its cabaret operation acquired no right by virtue of such patronage to view the entertainment."

That Court approved the holding in the case of Bush's Inc., supra, that the payments by patrons for refreshments or food served and paid for when the establishment was on the basis of a restaurant rather than a cabaret were not subject to the excise tax.

This Court concludes that the plaintiff, Iroquois Gardens, Inc., is entitled to a judgment as indicated herein. Counsel for plaintiff will submit the judgment on notice to the defendant.