Stanley C. McDONALD and Mildred Mc-Donald d/b/a Club Iroquois, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 4080.

United States District Court
W. D. Kentucky,
at Louisville.

Aug. 28, 1962.

Eli H. Brown, III, Wm. G. Hume, Louisville, Ky., for plaintiffs.

Wm. E. Scent, U. S. Atty., Louisville, Ky., John M. Hammerman, Atty., Dept. of Justice, Washington, D. C., for defendant.

SHELBOURNE, District Judge.

This is the second action instituted by the plaintiffs in this Court for the recovery of allegedly illegally assessed federal excise taxes. The first suit, Iroquois Gardens, Inc. v. United States, D.C., 197 F.Supp. 94, was filed June 23, 1960, and involved assessments made for the period January 1, 1956, to March 31, 1959. The instant action is based on assessments made for the period January 1, 1951, to December 31, 1953.

The original complaint filed herein December 9, 1960, seeks to recover $12,700.-00, the amount remitted to the District Director of Internal Revenue during the period January 1959 to October 1960 in payment of a portion of an alleged illegal and erroneous assessment of cabaret taxes. September 22, 1961, plaintiffs filed an amended and supplemental complaint seeking to recover an additional amount of $2,696.07 for cabaret taxes paid under a deficiency assessment during the period from December 1955 to August 1956.

Subsequent to this Court's decision in Iroquois Gardens Inc. v. United States, supra, it was stipulated that, for the purposes of this action only, no presumption of correctness attaches to the deficiency assessment made by the Commissioner of Internal Revenue against the plaintiffs on December 27, 1955. It was further stipulated that the only issue to be tried here, other than the jurisdictional question arising from the amended and supplemental complaint, is the amount of receipts derived by the plaintiffs during the period of entertainment and the correct amount of cabaret taxes due thereon for the years 1951, 1952, and 1953.

From the stipulation filed, the testimony heard at the trial on January 22, 1962, and briefs of counsel, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT

1. At all times involved in this proceeding, plaintiffs were engaged in the operation of a supper club known as Club Iroquois at 5306 New Cut Road, Louisville, Kentucky, where they maintained a dining room, a cocktail lounge known as Forest Lounge, and a room for private parties on a separate floor.

2. In the operation of Club Iroquois at all times mentioned herein, plaintiffs furnished music for dancing in the dining room from approximately 9:00 P.M., until shortly before closing each evening except Sunday and an occasional Monday.

3. During the period January 1, 1951, to December 31, 1953, plaintiffs charged, collected and remitted to the District Director of Internal Revenue at Louisville, Kentucky, at the times required by law, the 20% excise tax imposed by Section 1700(e) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 1700(e) on all charges for food, refreshments, and services provided to customers in the Club's dining room paid to plaintiffs by said customers while music for dancing or other entertainment was being furnished.

4. From January 1, 1951 to December 31, 1953, the plaintiffs did not charge, collect or pay over to the District Director any excise taxes on charges for food, refreshments, or services provided to customers in the Club's dining room on checks presented to said customers and paid prior to the time the entertainment commenced. Plaintiffs' procedure for handling guest checks during this period is found to be the same as set forth in detail in the Court's findings of fact No. 10 in Iroquois Gardens, Inc. v. United States, D.C., 197 F.Supp. 94, 96, and, therefore, it need not be recited here.

5. The federal excise tax returns filed by plaintiffs at the times required by law reported cabaret tax due and payment for same was remitted in a total amount of $28,177.83 for the period January 1, 1951 to December 31, 1953.

6. On or about December 9, 1955, the District Director notified plaintiffs that they owed $107,597.49 additional cabaret taxes for the period January 1, 1951, to December 31, 1953, and demanded payment of the alleged deficiency with interest at the rate of 6% per annum. The deficiency assessment made December 27, 1955, was based on the determination of the Commissioner of Internal Revenue that 90% of the Club's total receipts were taxable.

7. From December 1955 to August 1956, portions of the alleged deficiency in cabaret taxes totaling $2,696.07 were paid by plaintiffs. There is no allegation or any proof that plaintiffs filed a claim for refund of these payments.

8. February 16, 1956, claims for abatement of the alleged deficiency for the years 1951–1953 were filed and each and all of these claims were disallowed on October 6, 1959.

9. From January 1959 to October 1960, plaintiffs paid portions of the alleged cabaret tax deficiencies totaling $12,700.00 and filed their claim for refund of said amount with the District Director on November 2, 1960. The claim for refund was disallowed in its entirety on December 7, 1960, and this suit followed.

10. The books and records which reflect the taxable and non-taxable receipts of Club Iroquois during the period involved herein were prepared from figures presented to its bookkeeper and accountant, Earl W. Hemingway, by plaintiff Stanley C. McDonald. Hemingway came to the Club once a week to prepare the payroll and at such times McDonald furnished him a breakdown of the daily receipts. The taxable receipts consisted solely of dining room checks paid after the entertainment began, which receipts were totaled by the cashiers and reported to McDonald at the close of each day's business.

11. In the Club's records for 1951, Hemingway reported the taxable receipts in a column headed "Dining Room" which contained a figure for each day and monthly totals on same. The recapitulation sheet for 1951 listed dining room receipts at $39,417.34 and other receipts from the business at $184,130.16 for a total amount of $223,547.50. Although the column was headed "Dining Room", the uncontradicted evidence is that the figures in that column represented only taxable dining room receipt and the state and federal cabaret taxes collected thereon.

12. During the years 1952 and 1953, Hemingway employed a method of keep-

ing the Club's books different from that used in 1951. The receipts were reported in various columns without regard to taxability and taxable receipts were handled through "contra" or memo columns headed "Club". Recapitulation sheets listed total receipts of $295,018.11 for 1952 and $294,999.48 for 1953, and carried a column headed "Club" which was not a recapitulation of the memo "Club" columns. The memo "Club" contained a figure for each day and monthly totals of same, and the evidence is that the figures in these columns represented only taxable dining room receipts. The sum of the monthly totals of the memo columns for 1952 was $50,426.23 and $71,816.08 for 1953.

13. Patrick H. Mitchell, certified public accountant, testified that he performed certain audit functions to determine the correct excise tax liability of the plaintiffs for the period in question. He testified that he examined the records prepared by Hemingway and traced gross receipts from the business to the bank account and reconciled the two. Based upon his examination, Mitchell stated that plaintiffs' federal excise tax was overpaid $676.78 in 1951, underpaid $513.06 in 1952, and underpaid $2,870.-52 in 1953.

14. Plaintiffs' taxable receipts for 1951, including 2½% state excise tax and 20% federal excise tax collected, totaled $39,417.34 and represented $32,177.46 in taxable sales, $804.44 state excise tax collected, and $6,435.44 federal excise tax collected. Plaintiffs paid $7,112.58 in federal excise taxes for 1951, which was $677.14 in excess of their true tax liability.

15. Plaintiffs' taxable receipts for 1952 were $50,426.23 and the federal excise tax on same was $10,085.22. Plaintiffs' payment in the amount of $9,572.16 was $513.06 less than their tax liability for 1952.

16. In 1953, plaintiffs' taxable receipts were $71,816.08 and the federal excise tax on same was $14,363.20. Plaintiffs' payment of $11,492.68 was $2,870.52 less than their tax liability for 1953.

17. The Court finds that, in paying a total of $15,396.07 on the deficiency assessment for the period January 1, 1951, to December 31, 1953, plaintiffs overpaid their true tax liability for that period in the amount of $12,689.63 and are entitled to recover that sum with interest as allowed by law.

### CONCLUSIONS OF LAW

This Court has jurisdiction of this action, Section 1346(a) (1) of Title 28, United States Code.

■ The plaintiffs are not entitled to recover any payment upon the alleged illegal and erroneous tax assessment unless it is proven that the amount paid represents payment in excess of their true tax liability. Iroquois Gardens, Inc. v. United States, D.C., 197 F.Supp. 94, 98, and the cases cited therein.

■ The regulations under Section 1700(e) of the Internal Revenue Code of 1939, namely Regulation 43, Section 101.-32(b), provide:

"(2) Where the passing on of the tax is evidenced by the use of waiters' checks or bills which show the tax as a separate item or by the use of a cash register which records the tax under separate symbols on the cash register tape, as provided by paragraph (d) (1) or (2) of § 101.13, the total receipts from patrons (exclusive of tax) and the total taxes passed on to them as disclosed by the waiters' checks or bills or the cash register tapes for each day should be entered in the daily record. * * *

"(3) Such records shall contain sufficient information to enable the Commissioner to determine whether the correct amount of tax has been paid. The records shall at all times be open for inspection by internal revenue officers, and shall be maintained for a period of at least four years from the date the tax became due.

"(4) Where the passing on of the tax to the patrons is evidenced by entries on waiters' checks or bills or by the use of a cash register, the waiters' checks or bills or the cash register tapes must be kept by the establishment for a period of not less than six months."

The defendant contends that plaintiffs have not furnished the daily records required by subsection (2) of the above regulation. It does not accept the figures in the "Dining Room" and "Club" columns of the records kept by Hemingway as being an adequate disclosure of the taxable receipts of the business. However, as we read it, the regulation does not require the taxpayer to preserve any intermediate record coming between the guest checks and the daily records prepared by Hemingway.

Although the plaintiffs' records for the period in question leave much to be desired as to clarity, Hemingway's explanation shows that they did contain a daily record of taxable receipts even though they were not designated as such on the books. As stated by Judge Delehant in Swireck v. United States, DC Neb., unofficially reported in CCH 62–1 U.S.Tax Cas., par. 15,388, and CCH 62–2 U.S.Tax Cas., par 15,422, the plaintiffs' records "were disappointingly fragmentary" but "they were not entirely wanting." Since no explanation was offered to refute Hemingway's statements, we conclude that the "Dining Room" column in the 1951 records and the memo "Club" columns in the 1952 and 1953 records reflect the plaintiffs' daily taxable receipts and constitute the daily records required by the regulations.

Subsection (3) of the regulation requires that the records be sufficient to enable the Commissioner to determine the correct amount of tax to be paid. If we interpret the defendant's contention correctly, the sufficiency of the information furnished in the "Dining Room" and memo "Club" columns of plaintiffs' records would not have been questioned if those columns had been headed "Taxable Dining Room Receipts." We are of the

opinion that the failure to properly designate the taxable receipts as such in the records has no material bearing on the adequacy of the records to supply the information required by the regulation.

Having concluded that the plaintiffs are entitled to a judgment, the question of this Court's jurisdiction over the claim set forth in the amended and supplemental complaint becomes moot.

Counsel for the plaintiffs, upon notice to counsel for the defendant, will tender a judgment in accordance with the views expressed herein.